IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY S. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3404 |
| | § | |
| GEORGE R. WILLY, P.C. and | § | |
| GEORGE R. WILLY, Individually, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeremy S. Jones, brings this collective action suit against defendants, George R. Willy, P.C. and George R. Willy, individually, for unpaid overtime wages and retaliation pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Pending before the court are Defendants' Motion for Partial Summary Judgment (Docket Entry No. 18) and Plaintiff's Motion for Summary Judgment (Docket Entry No. 19). For the reasons explained below, defendants' motion for partial summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

## I.  Undisputed Facts

George R. Willy is a principal in the law firm of George R. Willy, P.C. On July 7, 2008, defendants hired plaintiff to work as a paralegal. Plaintiff assisted three supervising attorneys with their work:  Mervyn Mosbacher, Lisa Okoh-Brown, and Kevin Lear.

Plaintiff's supervising attorneys would assign him tasks such as researching various issues, writing legal documents and memoranda, and communicating with the firm's clients. Plaintiff received an annual salary of $40,000.00 and was classified as a non-exempt employee under the FLSA. Plaintiff complained about defendants' failure to pay overtime. Following his complaints about the defendants' failure to pay overtime, Willy threatened plaintiff with loss of his job and then stopped speaking to the plaintiff. A few days later, on October 17, 2008, plaintiff resigned.[1]

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a

---

[1]Declaration of Jeremy S. Jones, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19. See also Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, Exhibit C attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 4 ("Plaintiff was employed between July 7, 2008 and October 17, 2008 in the position of paralegal. Plaintiff was compensated at the rate of $40,000.00 per year. Plaintiff was classified as a non-exempt employee under the Fair Labor Standards Act.").

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S.Ct. at 2553-2554).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000).   Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III.  **Analysis**

Defendants contend that they are entitled to summary judgment on plaintiff's retaliation claim, and plaintiff contends that he is entitled to summary judgment on his claim for overtime pay.

**A.    Plaintiff's Claim for Failure to Pay Overtime**

Plaintiff contends that he is entitled to summary judgment on his claim for unpaid overtime because none of the elements needed to establish this claim are in dispute.[2]  Defendants respond that genuine issues of material fact concerning the amount of overtime that plaintiff worked and whether they knew that plaintiff was working overtime preclude the court from granting plaintiff's motion for summary judgment on his claim for unpaid overtime.[3]

1.    Applicable Law

Plaintiff seeks to hold defendants liable for violation of the overtime provision of the FLSA, 29 U.S.C. § 207(a).  This provision requires employers to pay one and one-half times the employee's regular rate for all hours worked in excess of forty hours per week.  Id.  In order to prevail on his claim for unpaid overtime, plaintiff must prove by a preponderance of the evidence:  (1) the existence of an employment relationship; (2) that he was engaged in commerce or employed by an enterprise engaged in commerce; (3) that defendants failed to pay him overtime required by the FLSA; and (4) that he is owed the amount claimed by a just and reasonable inference.  Id.  See also Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).

_____

[2]Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, pp. 4-5 ¶¶ 8-13.

[3]Defendants' Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 20.

-4-

2.   <u>Application of the Law to the Facts</u>

Plaintiff argues that he is entitled to summary judgment on his claim for unpaid overtime because defendants judicially admit that he is a former employee, that George R. Willy, P.C. is an enterprise engaged in commerce as defined in the FLSA, and that he worked more than forty hours a week but did not receive overtime pay. Citing his own declaration that he worked an average of twenty (20) hours per week overtime totaling 300 hours over the course of his employment, plaintiff asks the court to find that he is owed overtime compensation for 300 hours as a matter of law.[4]

Defendants respond that plaintiff is not entitled to summary judgment on his claim for unpaid overtime because they "dispute that [p]laintiff worked overtime in such amounts, or that they knew he was working such alleged overtime."[5]   In support of this argument, defendants submit the declaration of George R. Willy and time records maintained for plaintiff during the course of his employment.   Willy states that:

> 4.   During his employment, Mr. Jones and all other paralegals were required to clock-in and clock-out so that the Firm could keep track of the hours they worked.   Mr. Jones' time records reflect that Mr. Jones sometimes worked in excess of 40 hours in a work week, but he did not work 20 overtime hours per week, as he claims.   Attached to this

---

[4]Plaintiff's Motion for Summary Judgment, Docket Entry No. 19, p. 5 ¶¶ 10-13 (citing Declaration of Jeremy S. Jones, Exhibit A attached thereto).

[5]Defendants' Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 20, p. 1.

declaration as Exhibit 1 are Mr. Jones' time records during his employment with the Firm. Exhibit 1 was prepared at or near the time of the events recorded in those documents. At the time those documents contained in Exhibit 1 were prepared, it was the Firm's regular practice to make and keep such documents in the regular course of business activity. These documents are exact duplicates of the original.

5.   In or about October 2008, Mr. Jones informed me during a meeting that he had worked overtime without receiving compensation for such overtime work. This was the first and only time that Mr. Jones complained to me, and to my knowledge, to anyone else at the Firm, about working overtime without receiving overtime compensation. During the meeting, Mr. Jones did not specify how many overtime hours he had allegedly worked.

6.   Within days of the October 2008 meeting, Mr. Jones resigned his employment with the Firm.[6]

Attached to Willy's declaration are copies of time records maintained for the plaintiff indicating that there were two or three weeks during which he worked more than 20 hours of overtime, but there were also weeks during which he did not work any overtime, and that most weeks he worked between one to three hours of overtime for a total number of overtime hours that are far less than the 300 hours for which plaintiff seeks compensation.

Because both parties have submitted evidence of contradictory facts regarding the amount of overtime plaintiff worked while employed by the defendants, genuine issues of material fact preclude the court from granting summary judgment on this issue.

_____

[6]Declaration of George R. Willy, Exhibit 1 attached to Defendants' Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 20, ¶¶ 4-6.

**B.   Plaintiff's Claim for Retaliation**

Defendants contend that they are entitled to summary judgment on plaintiff's retaliation claim because plaintiff is unable to present evidence showing that he suffered a materially adverse injury.[7]  Plaintiff responds that defendants are not entitled to summary judgment on his retaliation claim because defendants retaliated against him for engaging in protected activity by making his working conditions so intolerable that any reasonable person in his situation would have felt compelled to resign.[8]

### 1.   Applicable Law

The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).  Courts analyze FLSA-retaliation claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).  See Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008).  Under that framework the employee must first establish a prima facie case of retaliation.  Id.  If the employee succeeds, the employer must offer a legitimate, non-retaliatory reason for the adverse employment action.  Id.  The burden then shifts back to the

---

[7]Defendants' Motion for Partial Summary Judgment, Docket Entry No. 18.

[8]Plaintiff Jeremy S. Jones' Response to Defendants' Motion for Partial Summary Judgment, Docket Entry No. 21.

employee to show that genuine issues of material fact exist regarding whether the employer's proffered reason is unworthy of credence. Id. To establish a prima facie case of retaliation, plaintiff must show (1) that he engaged in a statutorily-protected activity, (2) that he experienced a materially adverse injury, and (3) that a causal link exists between the protected activity and the injury. Id. See also Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2409 (2006).

   2.   Application of the Law to the Facts

Defendants do not dispute that plaintiff engaged in statutorily protected conduct. Instead, defendants contend that they are entitled to summary judgment on plaintiff's retaliation claim because plaintiff is unable to make a prima facie showing that he suffered a materially adverse injury. Plaintiff argues in response that he was constructively discharged by defendants' retaliatory actions, and that constructive discharge constitutes a materially adverse injury.

"A constructive discharge does qualify as an adverse employment action." Thomas v. Atmos Energy Corp., 223 Fed.Appx. 369, 376 (5th Cir. 2007) (citing Harvill, 433 F.3d at 439, and Landgraf v. USI Film Products, 968 F.2d 427, 431 (5th Cir. 1992), aff'd, 114 S.Ct. 1522 (1994)). "A constructive discharge has occurred when the employee resigns after 'the employer made the employee's working conditions so intolerable that a reasonable

-8-

employee would feel compelled to resign.'" Id. at 377 (quoting Barrow v. New Orleans Steamship Association, 10 F.3d 292, 297 (5th Cir. 1994)). "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." Hockman v. Westward Communications, 407 F.3d 317, 331 (5th Cir. 2004) (citing Barrow, 10 F.3d at 297). Such factors include (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of early retirement that would make the employee worse off regardless of whether the offer is accepted. Id. at 331-332 (citing Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir.), cert. denied, 122 S.Ct. 45 (2001)). In evaluating claims for constructive discharge, courts examine the working environment as a whole; the subjective state of mind of the employee is irrelevant. See Epps v. NCNB Texas, 7 F.3d 44, 46 (5th Cir. 1993). See also Barrow, 10 F.3d at 297 (for constructive discharge claim plaintiff must establish that the resignation was reasonable under all the circumstances).

Plaintiff argues that he reasonably felt compelled to resign days after he complained of defendants' failure to pay overtime because

31. Immediately after [he] complained about the Company's longstanding failure to comply with the FLSA

-9-

. . . Mr. Willy made a point to intimidate all other similarly situated employees, in front of [him], asking each employee whether "they had any problems" with the manner in which Willy compensated them.

32.  After he complained about the Company's failure to pay overtime, Jones was informed that Mr. Willy was "angry" with him and a number of key administrative officers actually stopped speaking to Jones entirely, making it next to impossible to perform his job duties.[9]

In support of these allegations, plaintiff submits a declaration in which he explains:

As a paralegal, it was my duty to gather the facts for each client's case that had been assigned to me.  I did this in one of two ways.  First, I would sit in with Mr. Willy on the initial client interview, which Mr. Willy would conduct approximately 90% of the time. If I was somehow unable to sit in on the initial meeting with the client and Mr. Willy, I would review the notes that Mr. Willy took during the course of the initial interview, including the notes on the initial client intake sheet (hereinafter "intake sheet"), and would then follow up with Mr. Willy regarding any questions I had or any explanations I needed after reviewing the intake sheet.

Once I had an understanding about the particular facts associated with each client, I would then review the intake sheet where Mr. Willy would have written down what legal services he deemed necessary for each particular client.  As a paralegal that was new to the area of immigration law, an area with which Mr. Willy was intimately familiar, I fully depended upon receiving guidance and direction from Mr. Willy so that I would know what my role in the case was to be.  In other words, I would be given direction by Mr. Willy as to what discrete tasks I was expected, as a paralegal, to handle, what reports to begin filling out, what letters (if any) needed to be written, what deadlines I face, and, overall, what strategy to engage in to best meet the client's needs.

---

[9]Original Collective Action Complaint, Docket Entry No. 1, p. 8 ¶¶ 31-32.

After I complained to Mr. Willy about the fact that Defendants were not paying me overtime (which is something I did both verbally and in writing . . . ), Mr. Willy stopped speaking to me. The timing between my lodging a complained about Defendants' failure to pay overtime with Mr. Willy and the time Mr. Willy responded to my complaints by completely shutting off all job related communications with me was very short, within a day or two of my complaint. After I complained to Mr. Willy, I was told by the office manager, Anu Sinha, and by the office accountant, Matthew Joseph, that my complaints had greatly angered Mr. Willy, and that I should not have complained about Defendants' failure to pay overtime, as, according to Mr. Joseph, "things were going to get much worse around the office." I was the only person that complained to Mr. Willy, and as a result, I was the only employee he stopped speaking to, although in the course of one meeting, he threatened any employee that joined with me in my complaints about failure to pay overtime. Mr. Willy also threatened me with the loss of my job and asked me what my kids would think if I lost my job. Mr. Willy also told me that I was not entitled to overtime, and that even if I was, that I, as well as all other firm employees, had waived their claim to overtime pay, and then he told us that if we didn't like that arrangement (regarding not being paid overtime), then we were all free to quit.

Mr. Willy's refusal to speak with me had not ever occurred prior to the time I complained to him about Defendants' failure to pay overtime. This behavior on the part of Mr. Willy not only prevented me from sitting in on the initial interviews with the clients, it also prevented me from following up on the intake sheet with Mr. Willy as to any questions I had about the meaning and intent of the notes taken by Mr. Willy. This operated to deprive me of the most important facts of the cases I was assigned to work on. . . .

. . .

All of this behavior on behalf of Mr. Willy effectively left it up to me to determine how to handle each case I worked on. Because I was a paralegal and not an attorney, this put me in the untenable position of being forced to either fail to do my job, which was to work up the files I had been given, or it forced me to work up the files without knowing all the facts related to the file or how to handle the file. . . .

-11-

. . . I realized that the situation was simply
impossible, and when I saw that it was not changing, and
it appeared that with every complaint I made about
overtime Mr. Willy was just digging in further, I
ultimately concluded that I did not have the experience,
training, or ability to read through files that were
sometimes inches thick and determine what facts were
operative, what facts were relevant, what law applied to
particular facts, and what facts required a specific
response within a specific period of time. As such, I
felt as if it was not possibl[e] to perform my job, and
that the only option then available to me was to resign,
which I ultimately did.[10]

Citing Burlington Northern, 126 S.Ct. at 2405, defendants
argue that, at best, the incidents about which plaintiff complains
constitute "snubbing" that do not rise to any significant injury.
In Burlington Northern the Supreme Court emphasized that a
plaintiff must show that the injury about which he complains is
objectively material or significant, reiterating that anti-
retaliation provisions do not create "a general civility code for
the American workplace." Id. at 2415. Thus, "[a]n employee's
decision to report discriminatory behavior cannot immunize that
employee from those petty slights or minor annoyances that often
take place at work and that all employees experience." Id. The
significance of any given act of retaliation depends upon the
particular circumstances, i.e., "[c]ontext matters." Id.

The court is not persuaded that plaintiff has presented
evidence from which a reasonable fact-finder could conclude that

_____

[10]Declaration of Jeremy S. Jones, Exhibit A attached to
Plaintiff Jeremy S. Jones' Response to Defendants' Motion for
Partial Summary Judgment, Docket Entry No. 21.

-12-

after plaintiff complained about the defendants' failure to pay overtime the defendants made plaintiff's "working conditions so intolerable that a reasonable employee would feel compelled to resign." <u>Barrow</u>, 10 F.3d at 297.   Defendants did not demote plaintiff, reduce his salary, reduce his job responsibilities, reassign him, badger him, harass him, humiliate him, or offer him early retirement.   Instead, accepting as true the statements contained in the declaration that plaintiff has submitted in opposition to the defendants' motion for partial summary judgment, the acts that plaintiff contends caused him to resign were that Willy stopped speaking to him, threatened him with the loss of his job, and told him that he was not entitled to overtime pay, that even if he was entitled to overtime pay, he -- as well as all other firm employees -- had waived his claim to overtime pay, and that if he did not like not being paid overtime he was free to resign.

In this circuit verbal threats of being fired do not constitute a constructive discharge because threats alone have no consequence.  <u>See</u> <u>Breaux v. City of Garland</u>, 205 F.3d 150, 159-60 (5th Cir.), <u>cert. denied</u>, 121 S.Ct. 52 (2000) (verbal threats of termination and criticism do not constitute an adverse employment action); <u>Chandler v. La Quinta Inns, Inc.</u>, 264 Fed.Appx. 422, 426 (5th Cir. 2008) ("a threat of termination does not constitute a constructive discharge") (citing <u>Hargay v. City of Hallandale</u>, 57 F.3d 1560, 1568 (11th Cir. 1995)).  Although courts have recognized that a threat of termination can amount to constructive discharge,

-13-

such a threat must place the employee under duress, leaving him no
option but to resign.  See Parker v. Board of Regents of Tulsa Jr.
College, 981 F.2d 1159, 1162 (10th Cir. 1992).  "[T]he assessment
[of] whether real alternatives (to resignation) were offered is
gauged by an objective standard rather than by the employee's
purely subjective evaluation; that the employee may perceive his
only option to be resignation . . . is irrelevant."  Hargay, 57
F.3d at 1568 (quoting Stone v. University of Maryland Medical
System Corp., 855 F.2d 167, 173 (4th Cir. 1988)).  "'[T]he mere
fact that the choice is between comparably unpleasant alternatives
. . . does not of itself establish that a resignation was induced
by duress or coercion, hence was involuntary.'"  Id. (quoting
Stone, 855 F.2d at 174).  This is so because the fact remains that
a plaintiff faced with uninviting alternatives still has a choice.
See id. ("Resignations obtained in cases where an employee is faced
with . . . unpleasant alternatives are nevertheless voluntary
because 'the fact remains that plaintiff had a choice.  [Plaintiff]
could stand pat and fight.'") (quoting Christie v. United States,
518 F.2d 584, 587 (Ct.Cl. 1975)).  The undisputed evidence in this
case shows that plaintiff had a choice to stay or to resign.

     Plaintiff asserts in the declaration filed in opposition to
the defendants' motion for partial summary judgment that he felt
compelled to resign because Willy stopped speaking to him thereby
making it impossible for him to perform the duties of his job as a

-14-

paralegal.[11]   The court is not persuaded that the plaintiff's evidence that Willy stopped speaking to him is sufficient to raise a genuine issue of material fact for trial.   In the declaration that plaintiff filed in support of his own motion for summary judgment, plaintiff stated that he received work assignments from and reported to three supervising attorneys, none of whom was Willy:

> As a paralegal, I was responsible for assisting my supervising attorneys with their work.  Mervyn Mosbacher, Lisa Okoh-Brown, and Kevin Lear were my supervising attorneys, and they would assign me tasks such as researching various issues, writing legal documents and memoranda, and communicating with the firm's clients.  I reported back to my supervising attorneys on the progress of each of these tasks.[12]

Moreover, plaintiff has not presented any evidence that any of his three supervising attorneys took any actions that made his working conditions intolerable.  Since the declaration in which plaintiff claims that Willy's decision to stop speaking to him prevented him from performing the duties of his job fails to explain why he did not and/or could not have sought direction from one or more of his three supervising attorneys, the fact that Willy stopped speaking to plaintiff is not evidence from which a reasonable finder of fact could conclude that plaintiff's working conditions were so intolerable that a reasonable employee in his position would have

---

[11]Id.

[12]Declaration of Jeremy S. Jones, Exhibit A attached to Plaintiff's Motion for Summary Judgment, Docket Entry No. 19.

felt compelled to resign.  It is undisputed that plaintiff resigned only a few days after Willy threatened to fire him and stopped speaking to him.  A reasonable employee would, at the very least, seek to remedy the situation with the employer before resigning. See Aryain v. Wal-Mart Stores Tex., L.P., 534 F.3d 473, 481 (5th Cir. 2008) ("In the constructive discharge context, we have recognized that part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast.").

The court concludes that the plaintiff has failed to raise a genuine issue of material fact for trial on his retaliation claim because he has failed to present any evidence from which a reasonable fact-finder could conclude he was constructively discharged after he complained about the defendants' failure to pay overtime.  The court concludes that the undisputed evidence establishes that plaintiff's resignation was voluntary because he had the choice to remain in his position and continue to do his job pursuant to the direction received -- not from Willy -- but from his supervising attorneys.  See Chandler, 264 Fed.Appx. at 426 ("a threat of termination does not constitute a constructive discharge").  See also Hargay, 57 F.3d at 1567 ("Resignations obtained in cases where an employee is faced with . . . unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff had a choice.").  Accordingly, the court concludes

-16-

that defendants' motion for partial summary judgment on plaintiff's retaliation claim should be granted.

## IV.  Conclusions and Order

For the reasons explained above, Defendants' Motion for Partial Summary Judgment (Docket Entry No. 18) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Docket Entry No. 19) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 1st day of March, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE